IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WANDA GREENWOOD, LADELLE HATFIELD and DEBORAH MCCLEESE, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>COMPUCREDIT CORPORATION; COLUMBUS BANK AND TRUST, jointly and individually,<br><br>    Defendants. | No. C 08-04878 CW<br><br>ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION |

    Defendants Compucredit Corporation and Columbus Bank and Trust move to compel Plaintiffs Wanda Greenwood, Ladelle Hatfield and Deborah McCleese to arbitrate their claims brought pursuant to the Credit Repair Organization Act (CROA). Plaintiffs oppose the motion. The motion was heard on February 26, 2009. Having considered all of the parties' papers and oral argument on the motion, the Court denies Defendants' motion. The Court concludes that CROA prohibits consumers from waiving their right to sue.

BACKGROUND

    The following facts are alleged in the complaint. Defendant Compucredit marketed a subprime credit card under the brand name

1 Aspire Visa to consumers with low or weak credit scores through
2 massive direct-mail solicitations and the internet.  Compucredit is
3 the exclusive marketer and advertiser of Aspire Visa credit cards
4 and the credit cards are issued by Columbus Bank and Trust.
5 Compucredit marketed the card by representing to consumers that an
6 Aspire Visa credit card could be used by the consumer to "rebuild
7 your credit," "rebuild poor credit," and "improve your credit
8 rating."  The promotional materials also noted that there was "no
9 deposit required," and that consumers would immediately receive
10 $300 in available credit when they received their credit card.
11 However, once Columbus Bank and Trust issued the credit card,
12 consumers were charged a $29 finance charge, a monthly $6.50
13 account maintenance fee and a $150 annual fee.  These fees were
14 immediately assessed against the $300 credit limit before the
15 consumer received the credit card.  Although Compucredit's
16 promotional materials mentioned these fees, it did so in small
17 print, buried in other information in the advertisement, and not in
18 proximity to its representations that no deposit was required.
19 Plaintiffs allege that Defendants' actions constitute several
20 violations of the CROA and of California's Unfair Competition Law.
21      Before receiving an Aspire Visa credit card, each Plaintiff
22 received a mailing entitled, Pre-Approved Acceptance Certificate.
23 The Acceptance Certificate includes the following paragraph:

> By signing, I request an Aspire Visa card and ask that an account be opened for me.  I certify that everything I have stated in the Acceptance Certificate is true and accurate to the best of my knowledge.  I have read and agree to be bound by the "Summary of Credit Terms" and "Terms of Offer" printed on the enclosed insert, <u>which insert includes a discussion of arbitration applicable to my account</u>, and is incorporated here by reference.

2

(emphasis in original).  Plaintiffs signed the Acceptance Certificate.  The "Terms of the Offer" states, in very small bold print in all capitals,

> IMPORTANT -- THE AGREEMENT YOU RECEIVE CONTAINS A BINDING ARBITRATION PROVISION.  IF A DISPUTE IS RESOLVED BY BINDING ARBITRATION, YOU WILL NOT HAVE THE RIGHT TO GO TO COURT OR HAVE THE DISPUTE HEARD BY A JURY, TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PERMITTED UNDER THE CODE OF PROCEDURE OF THE NATIONAL ARBITRATION FORUM ("NAF"), OR TO PARTICIPATE AS PART OF A CLASS OF CLAIMANTS RELATING TO SUCH DISPUTE.  OTHER RIGHTS AVAILABLE TO YOU IN COURT MAY BE UNAVAILABLE IN ARBITRATION.

In even smaller print, the "Summary of Credit Terms" contains the following:

> ARBITRATION PROVISION (AGREEMENT TO ARBITRATE CLAIMS)
> Any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to your Account, any transferred balances or this Agreement (collectively, "Claims"), upon the election of you or us, will be resolved by binding arbitration pursuant to this Arbitration Provision and the Code of Procedure ("NAF Rules") of the National Arbitration Forum ("NAF") in effect when the Claim is filed.  If for any reason the NAF cannot, will not or ceases to serve as arbitration administrator, we will substitute another nationally recognized arbitration organization utilizing a similar code of procedure.
> Upon such an election, neither you nor we will have the right to litigate in court the claim being arbitrated, including a jury trial, or to engage in pre-arbitration discovery except as provided under NAF Rules.  In addition, you will not have the right to participate as representative or member of any class of claimants relating to any claim subject to arbitration.  Except as set forth below, the arbitrator's decision will be final and binding.  Other rights available to you in court might not be available in arbitration.

The agreement also provides, "This Agreement, and your Account, and any claim, dispute or controversy (whether in contract, tort or otherwise) . . . are governed by and construed in

3

accordance with applicable federal law and the laws of Georgia.[1]

LEGAL STANDARD

I.  Motion to Compel Arbitration

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., written agreements that controversies between the parties shall be settled by arbitration are valid, irrevocable, and enforceable. 9 U.S.C. § 2. A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the district court which would, save for the arbitration agreement, have jurisdiction over that action, for an order directing that arbitration proceed as provided for in the agreement. 9 U.S.C. § 4. The FAA further provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.

If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the

---

[1] The Court takes judicial notice of Compucredit's most recent annual registration with the Georgia Secretary of State and its most recent notice of annual meeting of shareholders, although not of the truth of the facts stated therein. See Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (court may take judicial notice of facts not reasonably subject to dispute, either because they are generally known, are matters of public record or are capable of accurate and ready determination).

agreement." Id. The FAA reflects a "liberal federal policy favoring arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). A district court must compel arbitration under the FAA if it determines that: 1) there exists a valid agreement to arbitrate; and 2) the dispute falls within its terms. Stern v. Cingular Wireless Corp., 453 F. Supp. 2d 1138, 1143 (C.D. Cal. 2006) (citing Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000)).

                           DISCUSSION

I.   Motion to Compel Arbitration

Plaintiffs argue that the Court should not compel arbitration because the arbitration agreement is void under the CROA as to the national class, and it is void and unconscionable under California law as to the California class. Defendants clarify in their reply brief that they move to compel arbitration of the CROA claims as to the national class only, not of the claims pursued by the California class under California law. Therefore, the Court need not address whether the arbitration provision is void and unconscionable under California law.

Plaintiffs argue that the arbitration agreement is void as to the national class because the CROA contains specific provisions disallowing any waiver of a consumer's right to sue in court for CROA violations.[2] Each credit repair organization is required to

---

[2] Defendants do not dispute that they are a "credit repair organization" as defined by 15 U.S.C. § 1679a(3)(A). That section provides,
    The term "credit repair organization"
(continued...)

5

(1) inform the consumer of his or her right to sue, (2) provide such information to the consumer in a separate document containing a verbatim copy of an eight-paragraph text specified by Congress, which enumerates the "right to sue," (3) obtain from the consumer a signature confirming receipt of such information and (4) keep such signed confirmations on file for two years from the date of signing.  15 U.S.C. § 1679c(a)-(c).  The written disclosure specifically states that consumers "have a <u>right to sue</u> a credit repair organization that violates the Credit Repair Organization Act."  15 U.S.C. § 1679c (emphasis added).  This disclosure document must be provided to every consumer "before any contract or agreement between the consumer and the credit repair organization is executed."  <u>Id.</u> § 1679c(a).  The CROA contains a non-waiver provision, which states:

> Any waiver by any consumer of any protection provided by or <u>any right of the consumer</u> under this subchapter --
> (1) shall be treated as void; and (2) may not be enforced by any Federal or State court or any other person.

15 U.S.C. § 1679f(a) (emphasis added).  Based on these sections, Plaintiffs argue that they have a right to sue under CROA that cannot be waived.  The issue of arbitration under CROA appears to be one of first impression in the Ninth Circuit.

---

[2](...continued)
(A) means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

6

In <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 624, 628 (1985), the Supreme Court held, "Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."  The Court continued, "If Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention would be deducible from text or legislative history."  <u>Id.</u>  The party seeking to avoid arbitration of a statutory claim has the burden of establishing Congressional intent to preclude arbitration of the claim.  <u>Shearson/Am. Express, Inc. v. McMahon</u>, 482 U.S. 220, 227 (1987).

Only a few courts around the country have confronted this issue.  A district court in Texas concluded that "CROA's non-waiver of rights provisions, combined with its proclamation of a consumer's right to sue, represent precisely the expression of congressional intent required by" the Supreme Court to find that a waiver of judicial remedies is precluded.  <u>Alexander v. U.S. Credit Management, Inc.</u>, 384 F. Supp. 2d 1003, 1011 (N.D. Tx. 2005).  That court also stated that "Congress did not intend to void all waivers of rights under the Act, and require consumers to sign a congressionally mandated enumeration of their rights under the Act, only to permit those very same rights to be waived mere moments later upon the signing an agreement such as the one in question here."  <u>Id.</u> at 1012.  A district court in Alabama recently noted, "The striking congruence of the language used in the disclosure provision, § 1679c, and the non-waiver provision, § 1679f, convinces the court that Congress intended to create a right to go to court

7

under CROA that cannot be waived." Reynolds v. Credit Solutions, Inc., 541 F. Supp. 2d 1248, 1258 (N.D. Ala. 2008).  That court continued, "To recognize that CROA voids all waivers of 'any *right* of the consumer' and mandates that any waiver of the right to sue is void strikes the court as embracing an *unhealthy* regard for the federal policy favoring arbitration." Id. (emphasis in original).

However, a district court in Michigan noted that "besides entitling consumers to the actual disclosure statement, § 1679c does not afford consumers any rights or protections." Rex v. CSA-Credit Solutions of America, Inc., 507 F. Supp. 2d 788, 798 (W.D. Mich. 2007).  The court concluded that a different section of the statute, § 1679g(a), provides consumers with the actual right to bring a claim, and that section "does not contain any language indicating that claims under the CROA are nonarbitrable." Id. at 799.

The Third Circuit addressed this issue and similarly held that CROA's "anti-waiver provision as a matter of legislative intent would not apply to a right to assert claims in a judicial forum or on a class action basis, and a consumer asserting claims pursuant to the CROA may therefore waive such rights." Gay v. Creditinform, 511 F.3d 369, 383 (3d Cir. 2007).

The Third Circuit analogized the issue to one that the Supreme Court considered in Shearson/Am. Express, Inc. v. McMahon when it determined whether section 29(a) of the Exchange Act prohibited arbitration agreements.  Section 27 of the Act provides, "The district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter

8

or the rules and regulations thereunder." 15 U.S.C. § 78aa. And section 29(a) of the Act declares void "any condition, stipulation, or provision binding any person to waive compliance with any provision of [the Act]." Id. § 78cc(a). The plaintiffs in McMahon argued that section 29(a) prohibited waiver of the section 27 right to bring suit in a federal district court.

The Third Circuit took particular note of the following analysis in McMahon: "What the anti-waiver provision of § 29 forbids is enforcement of agreements to waive 'compliance' with the provisions of the statute," and "§ 27 itself does not impose any duty with which persons trading in securities must 'comply.'" McMahon, 482 U.S. at 228. The Supreme Court distinguished between the procedural right that section 27 provides, the right to file an action in a federal district court, and the substantive rights that section 29(a) provides. The Court continued, "By its terms, § 29(a) only prohibits waiver of the substantive obligations imposed by the Exchange Act," and "[b]ecause § 27 does not impose any statutory duties, its waiver does not constitute a waiver of 'compliance with any provision' of the Exchange Act under § 29(a)." Id.

Applying McMahon, the Third Circuit observed that "the section [of the CROA] in which this anti-waiver provision appears is entitled 'Noncompliance with this subchapter.'" Gay, 511 F.3d at 385. The Third Circuit reasoned that CROA's anti-waiver provision only "extend[s] to rights premised on the imposition of statutory duties." Id. Because the right to sue in a judicial forum is not a statutory duty under the CROA, the court concluded that the anti-waiver provision did not apply to it. Id.

The Court finds the reasoning of Alexander and Reynolds more

9

persuasive than that in Rex and Gay. In making this decision, the Court is mindful that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer, 500 U.S. at 26. The Court also notes that the Supreme Court has regularly concluded that statutory claims in a variety of contexts are arbitrable. See, e.g., Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 88-92 (2000) (Truth in Lending Act); Gilmer, 500 U.S. at 35 (Age Discrimination in Employment Act); Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 479-86 (1989) (Securities Act of 1933); McMahon, 482 U.S. at 227-40 (Securities Exchange Act of 1934, Racketeer Influenced and Corrupt Organization Act); Mitsubishi Motors, 473 U.S. at 628-40 (Sherman Anti-Trust Act).

However, the "right to sue" and non-waiver language used in CROA is different in important respects from other statutory language that the Supreme Court found not to preclude a waiver of judicial remedies. For instance, in Mitsubishi Motors, the Court considered whether language in 15 U.S.C. § 15(a) rendered antitrust claims non-arbitrable. In relevant part, § 15(a) provides that "any person who shall be injured in his business or property by reason of anything forbidden in antitrust laws may sue therefor in any district court of the United States." The Court held that this section did not evidence a congressional intent to preclude Sherman Act claims from being arbitrable. Further, the Court noted that the Federal Arbitration Act and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards favor arbitration for disputes in international commerce. The Court concluded that it was important "to subordinate domestic notions of arbitrability to the

10

international policy favoring commercial arbitration." Mitsubishi, 473 U.S. at 639. The present case differs from Mitsubishi in that it does not contain an international component. Further, CROA contains express language which precludes waiving "any right of the consumer." 15 U.S.C. § 1679f(a). A plain reading of the statute dictates that one of those rights is the "right to sue a credit repair organization that violates" CROA. Id. § 1679c. The Sherman Act does not contain similar non-waiver language.

In Rodriguez de Quijas, the Court held that the Securities Act of 1933 does not preclude arbitration. 490 U.S. 481-83. There, the Court considered jurisdictional and non-waiver language virtually identical to the language considered in McMahon. The main difference between the two is that the Securities Act allows for concurrent jurisdiction in state and federal courts whereas the Exchange Act provides for exclusive federal jurisdiction. Id. The Court relied on the same distinction between procedural and substantive provisions and held that waiving the jurisdictional provision does not fall under the prohibition against waiving "compliance" with the Act. Id.

Again, the non-waiver provision in CROA differs from the non-waiver provisions at issue in McMahon and Rodriquez. CROA's non-waiver provision is not limited to the waiver of compliance with the Act. Though the section of the CROA in which the non-waiver provision appears is entitled "Noncompliance with this subchapter," the following text of the statute specifically voids the waiver of any rights of the consumer. 15 U.S.C. § 1679f(a). The Supreme Court has noted that "the title of a statute . . . cannot limit the plain meaning of the text. For interpretive purposes, it is of use

11

only when it sheds light of some ambiguous word or phrase." Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 212 (1998). Here, because the text of § 1679f(a) is not ambiguous, the Court need not turn to the title of section to clarify its meaning. Further, the substantive-procedural distinction has no application to CROA. Unlike the Exchange Act and the Securities Act, CROA grants consumers the "right to sue." Vesting jurisdiction to hear a claim in a particular court is qualitatively different from a statute that expressly provides for a right to sue.

In Gilmer, the Court considered whether an arbitration agreement in a securities registration application could be avoided on the theory that arbitration "deprives claimants of the judicial forum provided for by the [Age Discrimination in Employment Act (ADEA)]." 500 U.S. at 29. The ADEA contains the following non-waiver provision: "any individual may not waive any right or claim under this Act unless the waiver is knowing and voluntary." However, the ADEA does not explicitly provide for a "right to sue." Rather, the ADEA takes a "flexible approach to resolution of claims. The EEOC, for example, is directed to pursue 'informal methods of conciliation, conference, and persuasion,' 29 U.S.C. § 626(b), which suggests that out-of-court dispute resolution, such as arbitration, is consistent with the statutory scheme established by Congress." Gilmer, 500 U.S. at 29.

Contrary to the ADEA, CROA specifically grants access to a judicial forum as a right and reveals no such "flexibility" toward alternative methods of dispute resolution. Moreover, in contrast to language in the ADEA that permits "knowing and voluntary" waiver of statutory rights, CROA proscribes any "waiver by any consumer of any

12

protection provided by or any right of the consumer under this title" irrespective of a consumer's knowledge or intent.  15 U.S.C. § 1679f(a).

In Green Tree, the Supreme Court considered whether claims under the Truth in Lending Act (TILA) were arbitrable.  The party challenging arbitration did not "contend that the TILA evinces an intention to preclude a waiver of judicial remedies."  531 U.S. at 90.  Instead, arbitration was challenged because the costs and fees would be prohibitive.  Id.  The Court held that the party seeking to avoid arbitration on such grounds "bears the burden of showing the likelihood of incurring such costs."  Id. at 92.  The Court concluded that "neither during discovery nor when the case was presented on the merits was there any timely showing at all on the point."  Id.  Therefore, the Court rejected the argument that prohibitive costs made it impossible to vindicate statutory rights in arbitration.  Id.  Unlike Green Tree, in the present case, arbitration is directly challenged on the ground that CROA evinces an intention to preclude a waiver of judicial remedies.

In sum, the Court concludes that Congress intended claims under the CROA to be non-arbitrable.  Requiring a dispute to be resolved through arbitration is incompatible with CROA's non-waivable right to sue.  Therefore, the Court finds that the arbitration clause is void.[3]

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion

---

[3] To the extent the Court relied upon evidence to which Defendants objected, the objections are overruled.  To the extent the Court did not rely on such evidence, Defendants' objections are overruled as moot.

13

to compel arbitration of Plaintiffs' CROA claims as they pertain to the national class (Docket Nos. 17 and 27).

IT IS SO ORDERED.

Dated: 4/1/09

_____
CLAUDIA WILKEN
United States District Judge