IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WANDA GREENWOOD, LADELLE HATFIELD and DEBORAH MCCLEESE, on behalf of themselves and others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>COMPUCREDIT CORPORATION; COLUMBUS BANK AND TRUST, jointly and individually,<br><br>      Defendants._____/ | No. C 08-04878 CW<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |

    Plaintiffs have sued Defendants Compucredit Corporation and Columbus Bank and Trust, alleging claims under the federal Credit Repair Organization Act (CROA), 15 U.S.C. § 1679 et seq., and violations of California's Unfair Competition Law (UCL), Cal. Bus. and Prof. Code § 17200 et seq. Plaintiffs bring the CROA claims on behalf of a proposed nation-wide class and the UCL claims on behalf of a proposed class of California residents. In this motion, Plaintiff Deborah McCleese moves to certify the UCL claim for deceptive advertising and promotion.[1] Defendants oppose the motion. The matter was heard on December 17, 2009. Having considered all of the parties' papers and oral argument on the motion, the Court grants Plaintiffs' motion.

---

[1] The individual claims of Plaintiffs Wanda Greenwood and Ladelle Hatfield remain pending as individual, not representative, claims.

BACKGROUND

The following facts are alleged in the complaint. Defendant Compucredit marketed a subprime credit card under the brand name Aspire Visa to consumers with low or weak credit scores, through massive direct-mail solicitations and the internet. Compucredit is the exclusive marketer and advertiser of Aspire Visa credit cards and the credit cards are issued by Columbus Bank and Trust. Compucredit marketed the card by representing to consumers that an Aspire Visa credit card could be used by the consumer to "rebuild your credit," "rebuild poor credit," and "improve your credit rating." The promotional materials also noted that there was "no deposit required," and that consumers would immediately receive $300 in available credit when they received their credit card. Once Columbus Bank and Trust issued the credit card, the customer had to make a $20 purchase payment to activate the card. Once activated, the consumers were charged a $29 finance charge, a monthly $6.50 account maintenance fee and a $150 annual fee. These fees were immediately assessed against the $300 credit limit before the consumer received the credit card. Although Compucredit's promotional materials mentioned these fees, it did so in small print, buried in other information in the advertisement, and not in proximity to its representations that no deposit was required. Plaintiffs allege that Defendants' actions constitute several violations of the CROA and of California's Unfair Competition Law.

McCleese moves to certify a UCL claim for deceptive advertising and promotion on behalf of the following class:

> All natural persons who, within four years prior to the commencement of this action and while residing in the State of California, were mailed a solicitation by CompuCredit

2

>    Corporation for the issuance of an Aspire Visa credit card by Columbus Bank and Trust, who subsequently were issued an Aspire Visa credit card by Columbus Bank and Trust and paid money to CompuCredit Corporation, directly or through Columbus Bank and Trust, on their Aspire Visa credit card accounts.
>
>    Excluded from the Class are (1) the officers, directors and employees of Compucredit Corporation and Columbus Bank and Trust; and (2) all judicial officers of the United States who preside over or hear this case, and all persons related to them as specified in 28 U.S.C. § 455(b)(5).

Reply at 1.

## LEGAL STANDARD

A plaintiff seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Rule 23(a) provides that a case is appropriate for certification as a class action if:

>    (1) the class is so numerous that joinder of all members is impracticable;
>
>    (2) there are questions of law or fact common to the class;
>
>    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
>    (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b) further provides that a case may be certified as a class action only if one of the following is true:

>    (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>        (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
>        (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the

3

> individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).  Plaintiffs assert that this case qualifies for class certification under subdivision (b)(3).

A plaintiff seeking class certification bears the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiff has borne its burden.  Gen. Tel. Co. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977).  In making this determination, the court may not consider the merits of the plaintiff's claims.  Burkhalter Travel Agency v. MacFarms Int'l, Inc., 141 F.R.D. 144, 152 (N.D. Cal. 1991).  Rather, the court must take the substantive allegations of the complaint as true.  Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975).  Nevertheless, the court need not accept conclusory or generic allegations regarding the suitability of the

4

litigation for resolution through class action. <u>Burkhalter</u>, 141 F.R.D. at 152. In addition, the court may consider supplemental evidentiary submissions of the parties. <u>In re Methionine Antitrust Litig.</u>, 204 F.R.D. 161, 163 (N.D. Cal. 2001); <u>see also</u> <u>Moore v. Hughes Helicopters, Inc.</u>, 708 F.2d 475, 480 (9th Cir. 1983)(noting that "some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a);" however, "it is improper to advance a decision on the merits at the class certification stage"). Ultimately, it is in the district court's discretion whether a class should be certified. <u>Molski v. Gleich</u>, 318 F.3d 937, 946 (9th Cir. 2003); <u>Burkhalter</u>, 141 F.R.D. at 152.

I.  Ascertainable Class

"An adequate class definition specifies 'a distinct group of plaintiffs whose members [can] be identified with particularity.'" <u>Campbell v. PricewaterhouseCoopers, LLP</u>, 253 F.R.D. 586, 593 (E.D. Cal. 2008) (quoting <u>Lerwill v. Inflight Motion Pictures, Inc.</u>, 582 F.2d 507, 512 (9th Cir. 1978). "The identity of class members must be ascertainable by reference to objective criteria." 5 James W. Moore, <u>Moore's Federal Practice</u>, § 23.21[1] (2001). Thus, a class definition is sufficient if the description of the class is "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." <u>O'Connor v. Boeing N. Am., Inc.</u>, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

Defendants argue that class certification must be denied because the identity of the class members is not objectively ascertainable in that it includes persons who were not California residents at the time they applied for the credit cards. In their

5

1  reply brief, Plaintiffs amend their proposed class definition to
2  exclude the possibility that the UCL would be applied extra-
3  territorially.  The class would be limited to persons who were
4  mailed Aspire Visa card solicitations while they were residents of
5  California.  Thus, this class is ascertainable.
6  II.  Rule 23(a) Requirements
7       A.   Numerosity
8       "The prerequisite of numerosity is discharged if 'the class is
9  so large that joinder of all members is impracticable.'" Hanlon v.
10 Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed.
11 R. Civ. P. 23(a)(1)).  Although the exact number of class members
12 is not known, it is likely well-above 100,000 people.  Defendants
13 do not appear to dispute that this action satisfies the numerosity
14 requirement of Rule 23(a) and the Court finds that it does.
15      B.   Commonality
16      Rule 23(a)(2) requires that there be "questions of law or fact
17 common to the class." Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit
18 has explained that Rule 23(a)(2) does not preclude class
19 certification if fewer than all questions of law or fact are common
20 to the class.  "All questions of fact and law need not be common to
21 satisfy the rule.  The existence of shared legal issues with
22 divergent factual predicates is sufficient, as is a common core of
23 salient facts coupled with disparate legal remedies within the
24 class." Hanlon, 150 F.3d at 1019.
25      Defendants argue that McCleese's motion fails because there
26 are significant differences among the class members.  First,
27 Defendants assert that each of the named Plaintiffs applied for the
28 credit card using different methods -- mail, telephone, internet --

6

and each claims to have received a different form of solicitation materials. However, the manner with which a class member applied for a credit card does not alter the alleged deceptive solicitation materials they received. And, although the solicitation materials received may contain subtle differences, they all are alleged to contain the same, or almost the same, combination of deceptive features.

Defendants also argue that the questions of fact are not common among proposed class members because the class may contain members whose credit scores increased after receiving their cards. Whether or not a class member's credit score increased or decreased over time does not alter Plaintiffs' claim that Defendants misrepresented their product. In sum, the Court concludes that whether class members were likely to be deceived by Defendants' solicitation materials presents common legal and factual issues for all class members.

C.   Typicality

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent

7

class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. "The typicality requirement does not mandate that products purchased, methods of purchase, or even damages of the named plaintiffs must be the same as those of the absent class members." In re Vitamins Antitrust Litig., 209 F.R.D. 251, 261 (D.D.C. 2002). Class certification is inappropriate, however, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Hanon, 976 F.2d at 508 (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990), cert. denied, 498 U.S. 1025 (1991)).

    Defendants argue that Plaintiff McCleese is not typical of the class because different versions of solicitation materials were distributed during the class period. However, as noted above, all solicitation materials were substantially the same. The minor differences in wording between a few solicitation versions does not defeat typicality.

    Defendants also assert that class certification is inappropriate because McCleese is subject to a unique defense. They argue that, because she paid her credit card fees on a regular basis, she must have known about the fees and not found them to be deceptive. However, the defense that McCleese did not rely on a misleading solicitation will not be unique to her. Every class representative asserting a UCL fraud claim will be subject to the same defense to reliance. Therefore, the Court concludes that McCleese's claims are reasonably coextensive with those of the absent class members.

8

D.   Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement consists of two inquiries: "(1) do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Staton v. Boeing Co., 327 F.3d 938, 958 (9th Cir. 2003). Defendants challenge McCleese as to both requirements of the rule.

Defendants first argue that McCleese is an inadequate class representative because she lacks standing to bring the UCL claim in that she did not show actual reliance on the allegedly deceptive or misleading statements. In In re Tobacco II Cases, 46 Cal. 4th 298 (2009), the California Supreme Court set out a liberal approach to the reliance requirement for a named plaintiff in a UCL class action:

> While a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause. It is not necessary that the plaintiff's reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor influencing his conduct. It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision. Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. A misrepresentation is judged to be "material" if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.

Id. at 326-27 (internal quotation marks, alteration marks and

9

citations omitted). Defendants argue that McCleese did not rely on their alleged misrepresentation because she testified that she did not care about the fees when she obtained the credit card. McCleese Decl. ¶¶ 5-8. However, McCleese also stated that, had she known about the amount of the fees and the manner in which they were assessed, she would have cared about the fees and she would not have activated the card. McCleese Dep. 115-16.

Defendants also argue that McCleese did not rely on their alleged misrepresentations because "she was aware of and had reviewed the fees associated with the card at the time she applied." Opp. at 11. However, this misstates McCleese's testimony. In McCleese's declaration opposing Defendants' Motion to Compel Arbitration, she stated, "When I applied for and received my Aspire Visa credit card I had poor credit. Because of my poor credit, I was unable to obtain a credit card with fee provisions that were more favorable to me than the Aspire Visa card." Docket No. 50, ¶ 5. This statement does not show that McCleese knew about the specific provisions that accompanied the Aspire Visa card when she obtained it. McCleese clarified this in her declaration submitted with the reply brief. The Court declines Defendants' request to strike this declaration; it does not contradict McCleese's earlier statement. Van Asdale v. International Game Technology, 577 F.3d 989, 999 (9th Cir. 2009) (holding that party submitting the later statement "is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition."). Rather, her later declaration clarified her prior testimony and, as such, constitutes evidence that she relied upon Defendants' alleged concealment of fees in their

10

solicitation materials.

Defendants also argue that McCleese is an inadequate representative because she is not sufficiently familiar with the facts or legal claims in the case. McCleese concedes that, at the time of her deposition, she was "deficient in these respects." Reply at 10. However, McCleese has since consulted with her attorneys and is now appropriately familiar with the lawsuit and her responsibilities as a class representative. Although, at one point, McCleese may have been unfamiliar with the proceedings, the Court finds that she is currently familiar with her claims and the facts of the case. The Court is satisfied that McCleese knows enough about the lawsuit to be an adequate class representative.

Defendants also argue that McCleese is inadequate because her counsel will not "prosecute the action vigorously on behalf of the class." Staton, 327 F.3d at 958. The Court disagrees. Although many of Plaintiffs' lawyers do not practice in California and do not have extensive experience bringing UCL claims, they have extensive experience with complex consumer class actions of various types. Moreover, Plaintiffs' counsel have familiarized themselves with the UCL such that the Court does not doubt the vigor with which they will prosecute this case.

## III. Certification Under Rule 23(b)(3)

In addition to meeting the Rule 23(a) prerequisites, McCleese must satisfy the requirements of Federal Rule of Civil Procedure 23(b). McCleese asserts that the putative class qualifies under Federal Rule of Civil Procedure 23(b)(3). "To qualify for certification under this subsection, a class must satisfy two conditions in addition to the Rule 23(a) prerequisites: common

11

questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of claims.'" Hanlon, 150 F.3d at 1022 (quoting Fed. R. Civ. P. 23(b)(3)).

A. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 623 (1997). The commonality preconditions of Rule 23(b)(3) are more rigorous than the companion requirements of Rule 23(a)(2). Hanlon, 150 F.3d at 1019. As noted above, Rule 23(a)(2) has been construed permissively such that the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. Id.

Rule 23(b)(3), in contrast, requires not just that some common questions exist, but that those common questions predominate. In Hanlon, the Ninth Circuit discussed the relationship between Rule 23(a)(2) and Rule 23(b)(3):

> The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.

Id. at 1022 (citations and internal quotation marks omitted). To

12

determine whether the predominance requirement is satisfied, "courts must identify the issues involved in the case and determine which are subject to generalized proof, and which must be the subject of individualized proof." In re Dynamic Random Access Memory (DRAM) Antitrust Litig., 2006 WL 1530166, at 6 (N.D. Cal.).

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. It incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state, or local law may serve as the basis for a UCL claim. Saunders v. Superior Ct., 27 Cal. App. 4th 832, 838-39 (1994). In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." Olszewski v. Scripps Health, 30 Cal. 4th 798, 827 (2003). With respect to fraudulent conduct, the UCL prohibits any activity that is "likely to deceive" members of the public. Puentes v. Wells Fargo Home Mortgage, Inc., 160 Cal. App. 4th 638, 645 (2008). Thus, unlike a claim for common law fraud, liability under the UCL does not require reliance and injury. As noted above, in In re Tobacco II Cases, the California Supreme Court held that only the named plaintiff in a UCL class action need demonstrate injury and causation.

Here, Plaintiffs may prove with generalized evidence that Defendants' conduct was "likely to deceive" members of the public. The individual circumstances of each class member's credit card application need not be examined because the unnamed class members are not required to prove reliance and damage. Common issues will

13

thus predominate on the UCL claim.

B. Superiority

Rule 23(b)(3) also requires that class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." Amchem, 521 U.S. at 617. The small amount of money at issue in each individual case makes it highly unlikely that individual litigation would be undertaken, but a class action would offer those with small claims the opportunity for meaningful redress. Therefore, certifying the UCL class is superior to, and more manageable than, any other procedure available for the treatment of factual and legal issues raised by Plaintiffs' claims.

/
/
/
/
/
/
/
/
/
/
/
/
/

CONCLUSION

For the foregoing reasons, the Court GRANTS McCleese's motion for class certification of the UCL claim for deceptive advertising and promotion (Docket No. 132). The parties shall attempt to agree on a class certification notice plan and submit such a plan to the Court within fourteen days from the date of this order. If the parties cannot agree, they shall each submit to the Court their own plan within fourteen days from the date of this order and the Court will determine the best course of action. The parties may begin discovery on the California claims. A case management conference is scheduled for April 20, 2010 at 2:00 p.m.

IT IS SO ORDERED.

Dated:

CLAUDIA WILKEN
United States District Judge