IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WANDA GREENWOOD, LADELLE HATFIELD and DEBORAH MCCLEESE, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>COMPUCREDIT CORPORATION; COLUMBUS BANK AND TRUST, jointly and individually,<br><br>    Defendants. | No. 08-04878 CW<br><br>ORDER DENYING DEFENDANTS' MOTION FOR DECERTIFICATION |

In this class action Plaintiffs have sued Defendants Compucredit Corporation and Columbus Bank and Trust for violations of the federal Credit Repair Organization Act (CROA), 15 U.S.C. § 1679 et seq., and California's Unfair Competition Law (UCL), Cal. Bus. and Prof. Code § 17200 et seq.  On January 19, 2010, this Court certified a class to pursue Plaintiffs' UCL claim. Docket No. 209.  Defendants now move to decertify the class. Docket No. 334.  Having considered all of the parties' papers, the Court denies Defendants' motion.

BACKGROUND

Plaintiffs allege that Defendant Compucredit marketed a sub-prime credit card under the brand name Aspire Visa, to consumers with low or weak credit scores, through massive direct-mail solicitations and the internet.  Compucredit is the exclusive marketer and advertiser of Aspire Visa credit cards.  Columbus Bank and Trust issues the credit cards.  Plaintiffs allege that Compucredit's marketing represented to consumers that an Aspire Visa credit card could be used to "rebuild your credit," "rebuild poor credit," and "improve your credit rating."  Furthermore, the promotional materials stated that there was "no deposit required," and that consumers would immediately receive $300 in available credit.  Once the customer received the card, Columbus Bank and Trust required a twenty dollar purchase payment to activate the card, and immediately assessed numerous fees against the $300 credit limit.  The fees were noted in fine print, buried in other information in the promotional materials, and not in close proximity to the representations that no deposit was required.  The fees reduced the available funds by more than half.

In its order certifying the class, the Court held that the proposed class satisfied all of the threshold requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation, as well Rule 23(b)(3)'s predominance test.  Docket No. 209.  The Court held that common issues in the UCL claim predominated over individualized issues,

2

because UCL claims for misrepresentation do not require that absent class members individually demonstrate reliance, pursuant to the California Supreme Court's decision in In re Tobacco II cases, 46 Cal. 4th 298 (2009).  The certified class comprises:

> All natural persons, who within four years prior to the commencement of this action and while residing in the State of California, were mailed a solicitation by CompuCredit Corporation for the issuance of an Aspire Visa by Columbus Bank and Trust, who subsequently were issued an Aspire Visa credit card by Columbus Bank and Trust and paid money to CompuCredit Corporation, on their Aspire Visa credit card accounts.
>
> Excluded from the Class are (1) the officers, directors and employees of Compucredit Corporation and Columbus Bank and Trust; and (2) all judicial officers of the United States who preside over or hear this case, and all persons related to them as specified in 28 U.S.C. § 455(b)(5).

Defendants move to decertify the class for lack of standing.  Defendants rely on the recent decision in Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023 (8th Cir. 2010), to argue that absent class members must establish injury in fact by demonstrating reliance on Defendants' alleged misrepresentations.  Defendants point to additional court decisions to argue that class certification was defective under Rule 23, in particular, Rule 23(b)(3)'s requirement that common questions of law or fact predominate over individual issues.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(c)(1)(C), an order granting class certification may be altered or amended at any time before judgment.  Furthermore, the court may decertify a class if the requirements for class certification under Rule 23 are not

3

met.  Gonzales v. Arrow Financial Services LLC, 489 F. Supp. 2d 1140, 1153 (S.D. Cal. 2007).  The party seeking decertification of a class bears the burden of demonstrating that the elements of Rule 23 have not been established.  Slaven v. BP America, Inc., 190 F.R.D. 649, 651 (C.D. Cal. 2000); accord, e.g., Otsuka v. Polo Ralph Lauren Corp., 2010 WL 366653, at *4 (N.D. Cal); Arrow Financial Services, 489 F. Supp at 1153.

Rule 23(b)(3) permits class certification where "the questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

DISCUSSION

Defendants point to the Eighth Circuit's decision in Avritt in support of decertification.  The plaintiffs in Avritt brought a class action, alleging fraud under the California UCL due to alleged misrepresentations in marketing an annuity product.  615 F.3d at 1026.  The plaintiffs were California residents who purchased the annuities from the defendant insurance company.  Id. The UCL claim alleged that the defendant engaged in a misleading rate-setting practice, which encouraged individuals to purchase the annuities based on a false assumption that the initial, favorable interest rate would continue over time.  Id.  The defendant's annuities were marketed by a sales force that included thousands of independent insurance agents.  Id. at 1027.  The

4

agents were not required to follow a particular sales script, and were free to answer any questions that the customers had about the product.  Id.  Sometimes sales agents would compare the annuities' more favorable initial interest rate to another company's use of an explicit first year bonus.  Id.  The class representatives did not receive any sales materials or brochures from the company, and the class was not defined to include only those who received printed solicitation materials and purchased the annuities.  Id. at 1028.

The plaintiffs in Avritt argued that they were not required to produce evidence of individual class members' reliance or injury in order to justify class certification.  Id. at 1033.  The Eighth Circuit panel disagreed.  The court first disapproved of Tobacco II's holding that absent class members were excused from establishing individual reliance on misrepresentations alleged in UCL claims.  The court reasoned that absent class members must satisfy individual standing requirements, because "a named plaintiff cannot represent a class of persons who lack the ability to bring suit themselves."  Id. at 1034.  Next, the court held that the proposed class claim failed Rule 23(b)(3)'s predominance test.  Id. at 1035.  The absence of a uniform approach to sales resulted in individual issues of reliance, which defeated the predominance of common issues by destroying the plaintiffs' ability to prove their claim with common evidence.

5

The decision in Avritt does not bind this Court, and it is unpersuasive. Avritt acknowledges that federal courts "do not require that each member of a class submit evidence of personal standing." 615 F.3d at 1034. The Ninth Circuit follows this well-settled law in regard to standing. See Bates v. United Parcel Service, Inc., 511 F.3d 974, 985 (9th Cir. 2007) (en banc) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements."); Casey v. Lewis, 4 F.3d 1516, 1519 (9th Cir. 1993) (citing O'Shea v. Littleton, 414 U.S. 488, 494-95 (1973). In class actions, the courts look to the representative class members for individualized evidence of standing. See e.g., Casey, 4 F.3d at 1519-20. "Representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." 7AA Wright et al., Federal Practice and Procedure (3d. 2005) § 1758.1 pp. 388-89.

> In a class action . . . the trial court initially must address whether the named plaintiffs have standing under Article III to assert their individual claims. If that initial test is met, the court must then scrutinize the putative class and its representatives to determine whether the relationship between them is such that under the requirements of Rule 23 the named plaintiffs may represent the class. The trial court generally need not address the final question of whether the class itself, after certification, has standing. If that court, guided by the nature and purpose of the substantive law on which the plaintiffs base their claims, properly applies Rule 23, then the certified class must necessarily have standing as an entity.

6

Vuyanich v. Republic Nat'l Bank of Dallas, 82 F.R.D. 420, 428 (N.D. Tex. 1979). A more recent case stated, "In a class action, the appropriate question with respect to unnamed class members is not whether they have standing to sue but whether the named plaintiff may assert their rights. Although this question implicates the prudential function of the standing requirement, it finds legislative expression in the requirements of Rule 23 and is therefore a Rule 23 question, rather than one of standing." Bzdawka v. Milwaukee County, 238 F.R.D. 469, 473-74 (E.D. Wisc. 2006).

The class in this case has satisfied Article III standing requirements. Defendants do not argue that the named Plaintiff McCleese lacks standing. Rather, Defendants assert that the class has failed to satisfy Article III standing requirements due to the lack of evidence that absent class members relied on the alleged misrepresentations. Defendants earlier moved for summary judgment on McCleese's UCL claim, arguing that she failed to establish reliance. Docket No. 297. The Court disagreed, however, and denied the motion. Docket No. 336; Transcript of September 16, 2010 hearing, 3:22-14:2. In light of the law explained above, the Court holds that Plaintiffs are not required to establish absent class members' individual reliance and personal standing, and the class has adequately established Article III standing.

The Court is not dissuaded by Defendants' cite to Burdick v. Union Security Insurance Company, 2009 U.S. Dist. LEXIS 121768

7

(C.D. Cal.). In that case, the plaintiffs sued the defendant insurance company for denying a disability benefit. Id. at *2-3. The court held that the UCL claims of 109 class members were unripe, because they had never applied for the benefit, they had never been denied the benefit, and thus they had not suffered an injury in fact, as required by Article III standing doctrine. Id. at *6-13. The court also rejected the plaintiffs' alternative "diminished value theory," ruling that it was not a cognizable claim under the UCL. Id. at *13-18. Based on these rulings, the court decertified the class. The case before this Court, however, presents no issues of ripeness, because the class members, including the named representative, all received the direct mail solicitations, were issued the Aspire Visa credit card, and paid money toward the card. Furthermore, the named Plaintiff produced sufficient evidence of actual reliance on the alleged misrepresentations. As a result, the class has established the requisite injury and justiciable UCL claim to satisfy Article III standing requirements.

    Defendants rely on Avritt for the additional argument that the class should be decertified for failure to satisfy Rule 23(b)(3), because of individualized issues of reliance. The present case is factually distinguishable on this point. First, class members in this case by definition have been exposed to Defendants' advertising, unlike the proposed class members in Avritt. The class in this case comprises California residents who

8

were mailed a solicitation by CompuCredit Corporation for the issuance of an Aspire Visa by Columbus Bank and Trust.  In Avritt, class members were not required to have received any promotional materials, and the named plaintiffs did not recall receiving any printed sales materials or brochures.

Second, Defendant CompuCredit Corporation marketed the Aspire credit card in a substantially more uniform manner, compared to the marketing practices in Avritt.  The solicitation materials in this case contain the same, or almost the same, combination of deceptive features.  Order Granting Mot. Class Cert., January 19, 2010, at 7.  In contrast, thousands of independent agents sold the annuities in Avritt without following a sales script.  The agents enjoyed the freedom to answer questions as they saw fit.  Although the Avritt plaintiffs, like those here, alleged fraudulent inducement in violation of the UCL, the present case defines the class to include only those who actually received written, substantially similar marketing materials, thus diminishing individualized issues of reliance.  In this respect, the present case is not factually "identical" to Avritt, as Defendants insist.

Likewise, Cohen v. DIRECTV, Inc. is distinguishable based on its facts.  178 Cal. App. 4th 966 (2010).  In Cohen, the plaintiffs alleged that DIRECTV violated the UCL by using false advertising to induce subscribers to purchase High Definition cable service.  Id. at 969-70.  The plaintiffs sought certification of a class defined as "Residents of the United

9

States of America who subscribed to DIRECTV's High Definition Programming Package." Id. at 970. The California Court of Appeal affirmed denial of class certification, holding that common issues of law and fact did not predominate in the proposed nation-wide class, because the service contracts were governed by the law of the state in which the subscriber resided, and the members of the proposed class included those who bought the service but were never exposed to the defendant's advertising, or never saw the defendant's advertisements that included the alleged misrepresentations. Id. at 979. Unlike Cohen, the class in this case is defined to include only California residents, who are clearly protected under the UCL, and only those California residents who received Defendant Compucredit's direct mail solicitations, were issued an Aspire credit card, and paid money on the card. The narrower class definition in the present case allows Plaintiffs to establish that common issues of law and fact predominate in the UCL action for deceptive advertising.

To the extent that the court of appeal's decision in Cohen might be read to require individualized evidence of class members' reliance, it is inconsistent with Tobacco II. The California Court of Appeal made the same point in In re Steroid Hormone Product Cases, 181 Cal. App. 4th 145, 158 (2010). The court stated:

> As Tobacco II made clear, Proposition 64 did not change the substantive law governing UCL claims, other than the standing requirements for the named

10

      plaintiffs, and "before Proposition 64, 'California courts have repeatedly held that relief under the UCL is available without individualized proof of deception, reliance and injury.'[Citation]"  Id. (citing Tobacco II, 46 Cal. 4th at 326).

This is a question of the meaning of a California state law, on which the California Supreme Court's decision in Tobacco II is determinative.

    The Court's holding that Plaintiffs have standing under Article III, and satisfy Rule 23 requirements, is bolstered by the principle that in UCL claims for false advertising, a material misrepresentation results in a presumption, or at least an inference, of individualized reliance.  Tobacco II, 46 Cal. 4th at 326-27.  California federal courts have applied this presumption of reliance in deciding whether to grant class certification for UCL fraud claims.  Estella v. Freedom Fin. Network, LLC, 2010 WL 2231790 at *10 and 13 (N.D. Cal.); see also, Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 376-77 (N.D. Cal. 2010).  This presumption of reliance, applied to all class members who necessarily received the allegedly materially deceptive solicitations, buttresses the ruling that class members suffered Article III injury.  The presumption also affirms that individualized issues of reliance do not overcome the predominance of common issues in this case.

    Defendants attempt to argue that the presumption of reliance is typically applied in securities cases.  However, nothing in Tobacco II or other cases applying the presumption limits the

11

principle to securities cases. Defendants attempt to assert that the presumption is inapt in this case, because Plaintiffs allege affirmative misrepresentation. Again, <u>Tobacco II</u> and other cases do not limit the presumption's application to complaints of fraudulent non-disclosure. Moreover, Plaintiffs' complaint includes allegations that Defendants failed to disclose fees and terms adequately.

Defendants argue that the presumption does not apply in this case, because the Aspire credit card marketing materials changed over time. This Court earlier found that, though the solicitation materials may contain subtle differences, they are all alleged to contain the same, or almost the same, combination of deceptive features. Order Granting Mot. Class Cert., January 19, 2010, at 7. Defendants have not offered any evidence that would support ruling otherwise.

Finally, Defendants attempt to rebut the presumption by pointing to Plaintiffs' interrogatory responses, which provide details about class members' knowledge about the fees. This evidence purportedly calls into question class members' reliance on the alleged misrepresentations in Defendants' solicitations. First of all, Defendants' quotations of the evidence are limited to facts about fee disclosures. Defendants' narrow quotes shed no light on, much less disprove, Plaintiffs' reliance on Defendants' alleged failure to disclose key terms and conditions, and their alleged misrepresentations that the Aspire card would improve

12

1  customers' credit score.  In fact, many of the interrogatory
2  responses support that class members applied for the card because
3  of the solicitations' representations that the card would improve
4  customers' credit.  See e.g., Defendants' Reply Brief, Ex. A.,
5  Kenneth Flemming, Lavonne Harris, Vicki Hicks, Wanda Lamar, Aline
6  Reed, Colleen Remur, at 7-10.  Most of the class members quoted by
7  Defendants learned about the fees through telephone calls.  This
8  evidence in regard to the telephone calls does not alter the
9  contents of the allegedly deceptive mailers.  Furthermore, from
10 the complete interrogatory responses, it is clear that frequently
11 the telephone calls did not fully inform class members of all of
12 the fees, or the total amount.  Many class members were only
13 partially informed, and were surprised by additional fees or the
14 total amount of fees that subsequently appeared on their
15 statement, or both.  Id., Wanda Lamar at 9; Neil Roberts at 8,
16 Kenneth Malloy at 20, Rita Marsden at 20.  Defendants' limited
17 citations to Plaintiffs' interrogatory responses do not rebut the
18 presumption of reliance on the material misrepresentations alleged
19 by Plaintiffs.  The interrogatories overall indicate that
20 Plaintiffs consistently lacked key information about the fees,
21 terms and conditions, and relied on the representation that the
22 card would help improve their credit scores.

13

CONCLUSION

For the forgoing reasons, the Court denies Defendants' motion to decertify the class.

IT IS SO ORDERED.



Dated: 11/19/2010

CLAUDIA WILKEN
United States District Judge

14